IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>NATALIE CHAVES,<br><br>Defendant/Petitioner.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Cr. No. 14-00579 JMS (03)<br>Civ. No. 16-00112 JMS-BMK<br><br>ORDER:  (1) DENYING IN PART<br>DEFENDANT/PETITIONER'S<br>MOTION TO VACATE, SET ASIDE,<br>OR CORRECT SENTENCE BY A<br>PERSON IN FEDERAL CUSTODY<br>PURSUANT TO 28 U.S.C. § 2255,<br>DOC. NO. 143; AND (2) DENYING<br>A CERTIFICATE OF<br>APPEALABILITY AS TO CERTAIN<br>CLAIMS |

**ORDER:  (1) DENYING IN PART DEFENDANT/PETITIONER'S MOTION
TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN
FEDERAL CUSTODY PURSUANT TO 28 U.S.C. § 2255, DOC. NO. 143;
AND (2) DENYING A CERTIFICATE OF APPEALABILITY AS TO
CERTAIN CLAIMS**

## I.  INTRODUCTION

On September 12, 2014, Defendant/Petitioner Natalie Chaves

("Chaves") pled guilty to one count of conspiracy to distribute and possess with

intent to distribute 500 grams or more of methamphetamine, in violation of 21

U.S.C. §§ 846, 841(a)(1) & 841(b)(1)(A).  On March 6, 2015, the court sentenced

Chaves to a term of 120 months imprisonment, five years of supervised release,

and a special assessment of $100.  Currently before the court is Chaves' Motion

Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody ("§ 2255 Motion").  Doc. No. 143.[1]

Chaves' § 2255 Motion challenges her conviction and sentence based on ineffective assistance of counsel.  Chaves claims that counsel:  (1) grossly misrepresented Chaves' sentencing exposure; (2) failed to explain the elements of the charge against her; (3) failed to investigate and therefore appreciate that Chaves was actually innocent and that the Government's evidence did not support the charged crime; (4) failed to explain the nature and ramifications of the waiver of her right to appeal; and (5) failed to file an appeal.

For the reasons discussed below, the § 2255 Motion is DENIED as to grounds one through four.  As to the fifth ground, the court directs the United States to inform the court by October 10, 2016 if (1) it seeks an evidentiary hearing, or (2) it elects not to oppose the § 2255 Motion and instead permit an appeal.  *See United States v. Sandoval Lopez*, 409 F.3d 1193, 1198 (9th Cir. 2005).

## II.  BACKGROUND

Chaves was arrested on May 27, 2014, along with four others following a controlled-delivery operation by the Drug Enforcement

---

[1]  All references to Document Numbers refer to those in Cr. No. 14-00579 JMS (03).

2

Administration ("DEA") and the Hawaii County Police Department ("HCPD").

Doc. No. 1, Compl. at 3-5.  On May 29, 2014, attorney Marcus Sierra ("Sierra")

was appointed to represent Chaves.  Doc. No. 15.  On June 5, 2014, Chaves was

indicted on one count of conspiracy to distribute and possess with intent to

distribute 500 grams or more of methamphetamine (Count 1), and one count of

attempted possession with intent to distribute 500 grams or more of

methamphetamine (Count 2).  Doc. No. 17, Indictment at 1-3.  On August 26,

2014, the Government filed a special information as to a prior drug conviction of

Chaves, pursuant to 21 U.S.C. § 851.  Doc. No. 60 at 2 (referencing a 2007 Hawaii

state-court conviction for promotion of a dangerous drug in the third degree).

Sierra withdrew from representing Chaves on September 3, 2014, and attorney

Lynn Panagakos ("Panagakos") was then appointed as Chaves' counsel.  Doc.

Nos. 68, 73.

On September 12, 2014, Chaves consented to enter a guilty plea

before Magistrate Judge Kevin S.C. Chang.  Pursuant to a Memorandum of Plea

Agreement ("Plea Agreement"), she pled guilty to Count 1 of the Indictment.  *See*

Doc. No. 82, Consent; *see also* Doc. No. 83, Plea Agreement; Doc. No. 84, Report

and Recommendation ("R&R").  Magistrate Judge Chang found that Chaves was:

fully competent and capable of entering an informed
plea, that the guilty plea was intelligently, knowingly and
voluntarily made, and that the offense charged is
supported by an independent basis in fact establishing
each of the essential elements of such offense.
[Magistrate Judge Chang] further determined that
[Chaves] intelligently, knowingly and voluntarily waived
the right to appeal or collaterally attack the sentence
except as provided in the plea agreement.

Doc. No. 84, R&R at 1-2.  This court accepted Chaves' guilty plea on September

30, 2014.  Doc. No. 85.

Chaves admitted to the following facts as set forth in the Plea

Agreement:

(1) on May 27, 2014, the DEA and HCPD performed a controlled
delivery of a parcel containing methamphetamine that was mailed
from Las Vegas, NV, to the Hawaii residence of co-defendant Saul
Furstenwerth ("Furstenwerth"), Doc. No. 83, Plea Agreement
¶¶ 8(A), (B);

(2) Chaves was present when the parcel was opened and knew that it
contained methamphetamine, *id.* ¶¶ 8(C), (D);

(3) co-defendants Ken Rio-Keahu King ("King") and Jacob Umemoto
("Umemoto") had traveled to Las Vegas in mid-late May 2014 to
acquire methamphetamine, *id.* ¶ 8(D);

///

///

///

4

(4) a portion of the methamphetamine was intended for Chaves, as she had given King purchase money for methamphetamine[2] prior to his departure for Las Vegas, *id.*;

(5) Chaves knew that King had planned to mail the methamphetamine from Las Vegas to Furstenwerth in Hawaii, *id.* ¶ 8(E);

(6) Chaves and her co-defendants were present on May 27, 2014, to open the parcel and retrieve the methamphetamine, *id.*; and

(7) Chaves knew that the methamphetamine was intended for distribution to others in Hawaii, *id.*

In addition, Chaves stipulated that the total weight of the methamphetamine seized from the parcel was 1794.74 grams. *Id.* ¶10(a). Chaves confirmed that she "fully understands the nature and elements of the crimes and allegations with which she has been charged." *Id.* ¶ 3. Chaves further admitted that "she is in fact guilty of the crime charged against her in Count 1." *Id.* ¶ 6.

The Plea Agreement referenced two felony drug convictions not included in the Government's special information, but that Chaves agreed could be used to calculate her criminal history under the United States Sentencing Commission Guidelines. *Id.* ¶ 1(C). Chaves acknowledged that because of the special information, the statutory penalties for Count 1 included "an imprisonment

---

[2] During the September 12, 2014 plea hearing, Panagakos clarified that "Chaves provided the money to her husband, who said he was going to provide it to King, and according to the Government's evidence did in fact -- the money was received by King. So it was provided to King, but through her husband." Doc. No. 149, Tr. at 18. Chaves agreed with this factual clarification. *Id.* at 19.

term of at least twenty (20) years and up to life, a fine of up to $20,000,000, or both, and a term of supervised release of at least ten (10) years and up to life." *Id.* ¶ 7.  Chaves waived her right to appeal or collaterally attack the conviction and sentence except (1) if the sentence imposed exceeds the sentencing guideline range, or (2) based on a claim of ineffective assistance of counsel. *Id.* ¶ 13.  And Chaves agreed to cooperate with the Government, with the understanding that the Government was under no obligation to seek a downward departure from the Guidelines for substantial assistance. *Id.* ¶¶ 21, 23.

During the September 12, 2014 change of plea hearing, Chaves confirmed under oath that she

> (1) understood the terms of the Plea Agreement, after reviewing and discussing it with counsel, and that her guilty plea was voluntary and not the result of force, threats, pressure, or promises (other than the specific terms of the Plea Agreement), Doc. No. 149, Tr. at 6-7;
>
> (2) understood the Government's summary of the elements of the charged offense, and that the Government would have to prove each of those elements, *id.* at 5, 14-15;
>
> (3) understood what her sentencing exposure would be if she pled guilty, including a mandatory minimum of 20 years imprisonment, *id.* at 10, 16; and
>
> (4) admitted facts establishing the elements of Count 1, *id.* at 15-22.

During the March 6, 2015 sentencing hearing, the court granted the Government's motion for downward departure pursuant to 18 U.S.C. § 3553(e), and sentenced Chaves to a term of 120 months imprisonment, five years of supervised release, and a special assessment of $100.  Doc. No. 137.

Chaves filed the instant § 2255 Motion on March 1, 2016.[3]   On March 22, 2016, the court set briefing deadlines of June 3, 2016, for the Government's Response and June 24, 2016, for Chaves' optional Reply.  Doc. No. 147, Order at 5.  The Government filed its Opposition on June 3, 2016.  Doc. No. 150.  On July 29, 2016, the court granted an extension of time until August 19, 2016, for Chaves to file a Reply, and warned that should Chaves fail to meet this deadline, the court would assume that she does not intend to reply and will issue a ruling.  Doc. No. 151.  Chaves neither filed nor sought an additional extension of time to file a Reply.

///

///

///

---

[3]  Although the § 2255 Motion was file-stamped by the Clerk of Court on March 11, 2016, under the prison "'mailbox rule,' a pro se prisoner's filing of a . . . habeas petition is deemed filed at the moment the prisoner delivers it to prison authorities for forwarding to the clerk of the court."  *Noble v. Adams*, 676 F.3d 1180, 1182 (9th Cir. 2012) (quoting *Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003)).

## III.  <u>STANDARD OF REVIEW</u>

The court's review of Chaves' § 2255 Motion is governed by 28

U.S.C. § 2255(a):

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right to be
> released upon the ground that the sentence was imposed
> in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess
> of the maximum authorized by law, or is otherwise
> subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the
> sentence.

A court should hold an evidentiary hearing on a § 2255 motion

"unless the files and records of the case conclusively show that the prisoner is

entitled to no relief."  28 U.S.C. § 2255(b).  "In determining whether a hearing and

findings of fact and conclusions of law are required, '[t]he standard essentially is

whether the movant has made specific factual allegations that, if true, state a claim

on which relief could be granted.'"  *United States v. Withers*, 638 F.3d 1055, 1062

(9th Cir. 2010) (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir.

1984)).  "Thus, the district court's decision that [the petitioner's] ineffective

assistance claim did not warrant an evidentiary hearing [is] correct if his

allegations, when viewed against the record, do not state a claim for relief or are

8

so palpably incredible or patently frivolous as to warrant summary dismissal."
*United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (quoting *Schaflander*,
743 F.2d at 717).  Conclusory statements in a § 2255 motion are insufficient to
require a hearing.  *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).

Although an evidentiary hearing is normally required when a
petitioner's allegations are based on facts outside of the record, no hearing is
required when the petitioner's credibility can be "conclusively decided on the
basis of documentary testimony and evidence in the record."  *Watts v. United
States*, 841 F.2d 275, 277 (9th Cir. 1988); *see also Frazer v. United States*, 18
F.3d 778, 781 (9th Cir. 1994).

## IV.  DISCUSSION

Chaves raises five grounds for ineffective assistance of counsel:
(1) counsel (Sierra and Panagakos) grossly misrepresented Chaves' sentencing
exposure; (2) counsel (Sierra and Panagakos) failed to explain the elements of the
conspiracy charge to her; (3) counsel (Sierra and Panagakos) failed to investigate
and therefore appreciate that Chaves was actually innocent and that the
Government's evidence did not support the charged crime; (4) counsel
(Panagakos) failed to explain the nature and ramifications of the waiver of her

9

right to appeal; and (5) counsel (Panagakos) failed to file an appeal, after Chaves

"informed her . . . that [Chaves] wished to appeal."  Doc. No. 143, Mot. at 5-7.

## A.     Legal Standards for Ineffective Assistance of Counsel Claims

### 1.     General Standards

        To prevail on an ineffective assistance claim, a petitioner must show

that (1) counsel's representation fell below an objective standard of

reasonableness, and (2) there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.

*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  That is, the petitioner

must also show that the deficiency was prejudicial.  *Id.* at 692.

        Counsel "is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional

judgment."  *Id*. at 690.  But, a court need not determine whether counsel's

performance was deficient before examining the prejudice suffered by the

petitioner as a result of the alleged deficiencies.  *See id*. at 697.  In other words,

any deficiency that does not result in prejudice necessarily fails.

### 2.     Guilty Pleas and Plea Bargaining

        Generally, "[a] voluntary and intelligent plea of guilty made by an

accused person, who has been advised by competent counsel, may not be

collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984), *overruled in*

*part on other grounds by Puckett v. United States*, 556 U.S. 129 (2009).

> When a criminal defendant has solemnly admitted in
> open court that he is in fact guilty of the offense with
> which he is charged, he may not thereafter raise
> independent claims relating to the deprivation of
> constitutional rights that occurred prior to the entry of
> the guilty plea.  He may only attack the voluntary and
> intelligent character of the guilty plea by showing that
> the advice he received from counsel was [ineffective].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  "[T]he negotiation of a plea

bargain is a critical phase of litigation for purposes of the Sixth Amendment right

to effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1406 (2012)

(quoting *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)).  "During plea

negotiations defendants are entitled to the effective assistance of competent

counsel." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (internal citation

omitted).  Thus, "the *Strickland* test applies to challenges to guilty pleas based on

ineffective assistance of counsel." *Cabinatan v. United States*, 2011 WL 255691,

at *3 (D. Haw. Jan. 26, 2011) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).

Where a petitioner has pled guilty and is asserting ineffective

assistance of counsel, the second *Strickland* requirement (prejudice) focuses on

whether counsel's constitutionally ineffective performance affected the outcome

of the plea process. "In cases where a defendant complains that ineffective assistance led him [or her] to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he [or she] would not have pled guilty and would have insisted on going to trial.'" *Frye*, 132 S. Ct. at 1409 (quoting *Hill*, 474 U.S. at 59).

In determining whether a plea was voluntarily and knowingly made, "[a] defendant's plea colloquy is given great weight." *Sam v. United States*, 2015 WL 9897779, at *6 (D. Ariz. Dec. 2, 2015) (citing *United States v. Boniface*, 601 F.2d 390, 393 (9th Cir. 1979)). *See also Blackledge*, 431 U.S. at 65 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea."). A collateral challenge based on allegations that contradict a defendant's sworn statements lacks merit. *See Muth v. Fondren*, 676 F.3d 815, 821-22 (9th Cir. 2012) (collecting cases and rejecting a defendant's challenge to his guilty plea that was contradicted by his sworn statements during the change of plea hearing).

12

**B.     Application to Chaves' Claims of Ineffective Assistance of Counsel**

*1.     Misrepresentation of Sentencing Exposure*

Chaves alleges that Sierra "grossly misrepresented [her] sentencing exposure and that once [Chaves'] husband was arrested, her conviction would be (con't)" (sentence left unfinished).  Doc. No. 143, Mot. at 5.  Chaves also alleges that Panagakos "represented that [Chaves] would receive a lower sentence, in order to induce her to accept the plea agreement." *Id.*  Chaves further alleges that Panagakos "acknowledged [Chaves'] innocence . . . and the guilt of [Chaves'] spouse . . . [and] represented . . . that, 'when they arrest your husband, you'll do less time.'" *Id.* at 6.  Chaves contends that "Panagakos advised [her] to accept the plea agreement, knowing [Panagakos'] client was innocent and with the promise of release upon her husband's arrest, a statement [Panagakos] knew to be false when she used [it] to induce [Chaves] into a plea agreement." *Id.*

In response, Sierra attests:

> During my representation of Ms. Chavez, I did not and could not have been able to represent that she would receive a particular sentence because her sentence would depend on how much credit the prosecution was willing to give her, if any, for substantial assistance.  However, I did advise Ms. Chavez that based on the quantity of Methamphetamine and her prior convictions, she would be subject to a statutory mandatory minimum of life in prison if she were convicted of the offense charged.  I

13

> informed Ms. Chavez that the Assistant U.S. Attorney
> indicated a willingness to file for a lesser mandatory
> minimum of 20 years if she changed her plea pursuant to
> a plea agreement and continued to cooperate with the
> government.  I also advised Ms. Chavez that if the
> Assistant U.S. Attorney felt that she had provided
> substantial assistance, he could file a motion for
> departure at sentencing that would remove the
> requirement of a 20-year minimum and would
> recommend a reduction from 20 years based on how
> much they valued the assistance she provided.

Doc. No. 150-5, Govt's Ex. E, Sierra Decl. ¶ 4.  And Panagakos attests:

> On September 3, 5, and 12, 2014, I met with Ms. Chaves
> at length and we discussed the case and reviewed all of
> the discovery, the indictment, the elements of the
> offenses, the proposed plea agreement, the Special
> Information the government had filed . . . , the statutory
> penalties, and the applicable sentencing guidelines.

Doc. No. 150-6, Govt's Ex. F, Panagakos Decl. ¶ 3.  Panagakos further states that

she "repeatedly explained to Ms. Chaves that the statutory mandatory minimum

penalty pursuant to her guilty plea was 20 years," *id.* ¶ 14, and that "the only way

the Court would be authorized to impose a sentence below 20 years was if the

government filed a motion" based on substantial assistance, *id.* ¶ 15.  And

Panagakos states that she "never promised Ms. Chaves that she would do less time

when the government arrested her husband." *Id.* ¶ 17.

Chaves provides no support for her claim that she was induced to enter into the Plea Agreement based on counsel's alleged misrepresentation of her sentencing exposure. To the contrary, her contention that she was induced to plead guilty based on any misunderstanding of her sentencing exposure is belied by the record.

The Plea Agreement, which Chaves signed, plainly states that her decision to plead guilty was "voluntary and not the result of force or threats." Doc. No. 83, Plea Agreement ¶ 6. And during the September 12, 2014 change of plea hearing, Chaves confirmed under oath that she reviewed the Plea Agreement with counsel, and denied that her guilty plea was wrongfully induced:

> THE COURT: Did you have an opportunity to read and discuss the plea agreement with your lawyer before you signed it?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: Do you understand the terms of the plea agreement?
>
> THE DEFENDANT: Oh, yes.
>
> THE COURT: Does the plea agreement cover every aspect of the agreement that you have with the Government in this case?
>
> THE DEFENDANT: Yes.

15

THE COURT:  Has anyone made any other or different
promise or assurance of any kind in an effort to get you
to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Has anyone attempted to force you to
plead guilty, or pressure you, or threaten you in any way?

THE DEFENDANT:  No.

Doc. No. 149, Tr. at 6-7.  Moreover, Chaves acknowledged that she understood

what her sentencing exposure would be if she pled guilty:

THE COURT:  Mr. Kawahara [(the Government's
counsel)], what are the maximum possible penalties for
Count 1 of the offense charged in the indictment?

MR. KAWAHARA:  Given the [filing] of the special
information that I described earlier, Your Honor, the
statutory penalties for Count 1 are as follows:  an
imprisonment term of at least 20 years and up to life, a
fine of up [to] $20 million or both, and a term of
supervised release of at least ten years and up to life.  In
addition, there is [a] $100 mandatory special assessment
that must be imposed.

THE COURT:  Ms. Panagakos, do you agree with that
summary as to the possible penalties?

MS. PANAGAKOS:  Yes, Your Honor.

THE COURT:  Ms. Chaves, do you understand that these
are the possible penalties that you face if you enter a
guilty plea to Count 1 in the indictment?

THE DEFENDANT:  Yes.

. . . .

THE COURT:  The United States Sentencing
Commission has issued guidelines for judges to use in
determining the sentence in a criminal case.  While
judges are not bound to apply the guidelines, judges
must consult the guidelines and take them into account in
determining a sentence.  Have you and your attorney
talked about how the guidelines might apply to your
case?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that the Court will
not be able to determine the advisory guideline sentence
for your case until after the presentence report has been
completed, and you and the Government have had an
opportunity to challenge the reported facts and the
application of the guidelines recommended by the
probation officer, *and that the sentence imposed may be
different from any estimate your attorney may have given
you*?

THE DEFENDANT:  Yes.

*Id.* at 10-11 (emphasis added).

Chaves' claim based on counsel's misrepresentation of her sentencing

exposure fails under both *Strickland* prongs.  First, her allegations are contradicted

by both her admissions in the Plea Agreement and statements made during the plea

hearing.  Thus, given the strong presumption of veracity of open court

17

declarations, the court finds that Chaves' allegations of counsel's deficient

performance regarding her sentencing exposure are not credible.  *See Blackledge*,

431 U.S. at 65; *Muth v. Fondren*, 676 F.3d at 821-22; *Ross*, 511 F.3d at 1236.

Second, Chaves cannot prove prejudice -- that but for counsel's

misrepresentations, she would have insisted on proceeding to trial -- the record of

the plea hearing confirms that Chaves pled guilty with full knowledge of her

*actual* sentencing exposure.  Accordingly, the court finds that Chaves' first

ineffective assistance of counsel claim fails.

### 2.     *Failure to Explain the Elements of the Charged Offense*

Chaves alleges that both Sierra's and Panagakos' ineffective

assistance "allowed Petitioner to plead guilty without her having a clear

understanding of the required elements of the crime alleged."  Doc. No. 143, Mot.

at 6.

In response, Sierra attests that during an August 20, 2014 phone

conference with Chaves, they "reviewed the elements that the prosecution needs to

prove . . . and the evidence that goes to each element. . . .  We then went over all of

the essential elements of the conspiracy count and the evidence that matches each

element."  Doc. No. 150-5, Govt's Ex. E, Sierra Decl. ¶ 15.  And as set forth

above, Panagakos states that she also "reviewed all of the discovery [and] . . . the

elements of the offenses" with Chaves.  Doc. No. 150-6, Govt's Ex. F, Panagakos

Decl. ¶ 3; *see also id.* ¶ 13 ("I discussed the elements of the offenses charged with

Ms. Chaves.").

As with the first claim, this claim is contradicted by the record and is

therefore, without merit.  By signing the Plea Agreement, Chaves confirmed that

she "fully understands the nature and *elements* of the crimes and allegations with

which she has been charged."  Doc. No. 83, Plea Agreement ¶ 3 (emphasis added).

In addition, during the plea hearing, Chaves confirmed that she discussed the

conspiracy charge and facts supporting that crime in the Indictment with counsel:

> THE COURT:  . . . Ms. Chaves, have you received a
> copy of the indictment pending against you, that is the
> written charge made in this case?
>
> THE DEFENDANT:  Yes, I did.
>
> THE COURT:  Have you discussed the charges and all
> of the facts surrounding the charges with Panagakos,
> your attorney?
>
> THE DEFENDANT:  Yes, I did.

Doc. No. 149, Tr. at 5.  Later in the plea hearing, the government summarized the

elements of the charged offense, and Chaves acknowledged her understanding that

the Government would have to prove each of those elements:

THE COURT:  All right.  Mr. Kawahara, would you summarize for the Court and the Defendant, the essential elements, which the Government would be required to prove if there was a trial on Count 1 of the indictment?

MR. KAWAHARA:  The charge in Count 1, Your Honor, is a conspiracy.  The goal stated in the indictment is the distribution and the possession with intent to distribute methamphetamine.

The crime itself is the agreement of two or more persons to commit that stated goal of distribution or possession with intent to distribute methamphetamine.  It does not matter that the goal of distribution or possession with intent to distribute was never achieved, because the crime itself is the agreement to do so in the first instance.

The proof of the agreement may be done by many means. It does not have to be an agreement set forth in writing. It is an agreement that has been agreed upon say by joint conduct all of which was for the purpose of achieving that goal of distribution or possession with intent to distribute methamphetamine.  And finally the amount of methamphetamine involved had to have been at least 500 grams or more of -- a mixture or substance containing a detectable amount of methamphetamine, its salts or salts of its isomers.

THE COURT:  Ms. Panagakos, do you agree with that summary as to the essential elements?

MS. PANAGAKOS: Yes, Your Honor.

THE COURT:  Ms. Chaves, do you understand that if there was a trial on the charge, the United States would be required to present evidence sufficient to prove each of these essential elements beyond a reasonable doubt?

THE DEFENDANT:  Yes.

*Id.* at 14-15.  The court then asked Chaves in a series of questions if she admitted facts establishing the elements of Count 1, to which Chaves repeatedly answered in the affirmative and/or summarized in her own words.  *See id.* at 15-22.

Chaves' second claim also fails under both *Strickland* prongs.  Based on the foregoing, the court finds Chaves' allegations of ineffective assistance of counsel based on a failure to explain the elements of the conspiracy charge to be wholly incredible and without merit.  *See Blackledge*, 431 U.S. at 65; *Muth v. Fondren*, 676 F.3d at 821-22; *Ross*, 511 F.3d at 1236.  And Chaves cannot prove prejudice -- that but for counsel's failure to explain the conspiracy charge elements, she would have insisted on proceeding to trial.  The record confirms that she pled guilty after admitting that she understood the essential elements of the conspiracy charge.  Accordingly, the court finds that Chaves' second ineffective assistance of counsel claim fails.

### 3.   *Failure to Investigate*

Chaves claims that Sierra "failed to conduct a basic investigation into the facts of the case," and that if he had, he "would have found that Petitioner did not commit the acts which would subject her to successful prosecution under the indictment."  Doc. No. 143, Mot. at 6.  Similarly, Chaves alleges that even though

Panagakos "acknowledged Petitioner's innocence . . . and the guilt of Petitioner's spouse," she "failed to investigate, consult or retain experts or investigators to locate and interview Petitioner's husband or other witnesses." *Id.* Moreover, Chaves claims that both counsel "failed to put the Government's case to a meaningful and adversarial testing." *Id.* In short, Chaves appears to claim that both counsel were ineffective because they advised her to enter a guilty plea without first investigating, and therefore failed to discover that Chaves was actually innocent and that the Government's evidence did not support the conspiracy charge.

In response, Sierra states that after her arrest, Chaves:

signed a typed statement . . . admitt[ing] giving $6,000 to Mr. King, through her husband, to purchase a half kilo of Methamphetamine from Las Vegas so she could distribute it here in Hawaii. Ms. Chavez also admitted that the reason she was in the room was to receive her share of the Methamphetamine from the package.

Doc. No. 150-5, Govt's Ex. E ¶ 3. Sierra further states that:

25. I thoroughly reviewed the reports, the photographs, the warrants and Ms. Chavez's written statement. I also interviewed Ms. Chavez for her side of the story and I listened to her statements during the proffer interview. There was no dispute over what happened. Her statements were consistent with the reports and the charge and went even further to factually confirm that she committed the crimes alleged. I found nothing

inconsistent or illogical that would require an
investigation.

26.  Ms. Chavez claims in her motion that her husband is
the guilty party, not her, and that I should have
interviewed her husband.  However, there is nothing in
the discovery to support that assertion.  Moreover, Ms.
Chavez never previously asserted to me nor to the DEA
that her husband was the guilty party and not her.  There
is no reason to believe that Ms. Chavez's husband could
have offered testimony that would exonerate Ms.
Chavez.

*Id.* ¶¶ 25, 26.  And Panagakos states that she "reviewed all of the discovery," Doc.

No. 150-6, Govt's Ex. F ¶ 3, and "discussed all of the evidence with Ms. Chaves,"

*id.* ¶ 7 (including Chaves' written statement).  Panagakos further states her

"assessment that the charges against Ms. Chaves were supported by compelling

evidence[,]" she "never acknowledged [Chaves'] innocence[, and] Ms. Chaves

never told [her] that she believed she was innocent."  *Id.* ¶ 9.  Panagakos explains

that "by her own written statement, Ms. Chaves admitted that she and her husband

were co-conspirators.  Thus, there was no basis to believe that Ms. Chaves'

husband had information which would negate Ms. Chaves' guilt."  *Id.* ¶ 11.

This claim is also without merit.  In guilty plea cases, where counsel's

alleged ineffective assistance is a failure to investigate, "the determination of

whether the error 'prejudiced' the defendant by causing him [or her] to plead

guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change [the] recommendation as to the plea." *Hill*, 474 U.S. at 59.

Chaves signed the Plea Agreement, admitting that "she is in fact guilty of the crime charged against her in Count 1" and admitting to the factual basis of her guilty plea.  Doc. No. 83, Plea Agreement ¶¶ 6, 8.  Chaves also admitted the facts establishing her guilt during her plea hearing.  Specifically, in response to a series of questions from the court asking if Chaves admitted specific facts establishing the elements of Count 1, Chaves repeatedly answered in the affirmative and/or summarized such facts in her own words.  *See* Doc. No. 149, Tr. at 15-22 (including Chaves' statement that "I gave my husband money to buy methamphetamine, and I went with Rio and Jacob Umemoto to go pick it up" pursuant to an agreement "[w]ith my husband").  Moreover, Chaves confirmed that after she was arrested she provided "a written statement" admitting her involvement with and knowledge of the conspiracy:

> MR. KAWAHARA: . . . Once arriving at the warehouse, [Furstenwerth, King, Umemoto, and Chaves] went to this particular office where that parcel was opened in the presence of all of them.  Subsequent to their arrest after the parcel was opened, Ms. Chaves gave a written statement to the officers essentially indicating that she

had -- she knew that the parcel contained methamphetamine.

A portion of it was for her, because she had provided purchase money to King and Umemoto for them to acquire a large amount of methamphetamine in Las Vegas, which was then to be mailed back to Mr. Furstenwerth on Hilo.  And she knew that this methamphetamine was going to be distributed to other persons by the co-Defendants after its arrival in Hilo.

THE COURT:  Ms. Chaves, did you hear what Mr. Kawahara just told me?

THE DEFENDANT:  Yes.

THE COURT:  Is what he said about you and your conduct true?

THE DEFENDANT:  Yes.

*Id.* at 21-22.

Based on the foregoing, Chaves' claim based on counsel's failure to investigate also fails under both *Strickland* prongs.  Chaves' allegations that she was innocent and that the Government's evidence (including Chaves' written statement) did not support the conspiracy charge are contradicted by her sworn statements during the plea hearing and therefore, are wholly incredible and lack merit.  *See Blackledge*, 431 U.S. at 65; *see also Muth*, 676 F.3d at 821-22.  And given Chaves' admission that she provided a written statement shortly after her

arrest in which she admitted facts  supporting her guilt, Chaves cannot show how further investigation -- in particular interviewing her husband and/or obtaining experts -- would have changed counsel's recommendation that she plead guilty. *See Hill*, 474 U.S. at 59.

Furthermore, Chaves cannot prove prejudice -- she did, in fact, enter her guilty plea despite knowing that counsel had neither interviewed her husband nor challenged the Government's evidence.  Therefore, she cannot show that there is a reasonable probability that she would have rejected the Plea Agreement and proceeded to trial but for counsel's alleged failure to investigate the case. Accordingly, the court finds that Chaves third ineffective assistance of counsel claim fails.

### 4.    *Failure to Explain the Plea Agreement's Waiver of the Right to Appeal*

Chaves alleges that Panagakos "failed to adequately inform her . . . of her waivers of rights to appeal her sentence."  Doc. No. 143, § 2255 Motion at 5, 7.  More specifically, "[Panagakos] failed to adequately inform [Chaves] of the ramifications of such waivers and instead, rushed her into a plea agreement which caused her to waive her rights to appeal." *Id.* at 7.

26

In response, Panagakos states that she "fully informed Ms. Chaves about the appeal waiver provisions of the plea agreement," and that she "did not rush Ms. Chaves into a plea agreement."  Doc. No. 150-6, Panagakos Decl. ¶¶ 18, 19.  Rather, Panagakos states that she "repeatedly informed [Chaves] that it was her decision whether to enter a guilty plea or proceed to trial."  *Id.* ¶ 19.

Once again, Chaves provides no support for her claim.  Rather, her contention that she was rushed into entering the Plea Agreement without understanding that she was waiving her right to appeal is contradicted by the record and therefore, is without merit.

The Plea Agreement clearly states that Chaves "is aware that she has the right to appeal her conviction and the sentence imposed," and that she "knowingly waives the right to appeal, except . . . [if] the Court imposes a sentence greater than specified in the guideline range determined by the Court." Doc. No. 83, Plea Agreement ¶ 13.  And as set forth above, during the change of plea hearing, Chaves confirmed that she reviewed the Plea Agreement with counsel, understood all terms of the Plea Agreement, and was not pressured to plead guilty.  *See* Doc. No. 149, Tr. at 6-7.  Moreover, in summarizing the major terms of the Plea Agreement, counsel for the Government stated in part:

> MR. KAWAHARA: . . . Normally, under a -- if a person is convicted in Federal District Court, that person may appeal the judgment and sentence of the Court. However, pursuant to the plea agreement, Defendant waives or gives up her right to seek such an appeal of the judgment and sentence in this Court, except in one limited instance, that being that to the extent that this Court will adjudge a sentence in excess of the advisory guideline sentencing range. Then, and only then, the Defendant may appeal that portion of the sentence in excess of the range. Other than that, she gives up her right to seek an appeal with a judgment and sentence in this case.
>
> By like token, a Defendant . . . also has the right, under federal law, to seek what is called collateral review or habeas corpus relief. . . . However, under the plea agreement, Defendant waives or gives up her right to seek such collateral review or habeas corpus relief except in two limited instances.
>
> The first one where she may seek collateral review or habeas corpus is similar to direct appeal. . . .
>
> The second exception is to the extent that the judgment and the sentence was affected by ineffective assistance of defense counsel. But other than those two exceptions, Defendant waives or gives up her right to seek such collateral review or habeas corpus relief.

*Id.* at 7-8. The court then confirmed Chaves' understanding of this waiver:

> THE COURT: Ms. Chaves, does that accurately summarize your agreement with the Government in this case?
>
> THE DEFENDANT: Yes.

28

THE COURT:  Do you understand that you are waiving or giving up all of your rights to appeal except for two situations?  First, if Judge Seabright imposes a sentence above the advisory sentencing guidelines; and second, in the event of ineffective assistance of counsel?

THE DEFENDANT:  Yes.

*Id.* at 9.

And prior to accepting her guilty plea, the court reiterated Chaves' rights should she proceed to trial rather than plead guilty, including "the right to appeal that conviction to a higher court, and if you could not afford to pay the cost of an appeal, the Government would pay those costs for you." *Id.* at 13.  Chaves then acknowledged her understanding of both her right to appeal and her waiver of such right:

THE COURT: . . .  Do you understand that you have all of those rights?

THE DEFENDANT:  Yes.
THE COURT:  If you plead guilty, however, and if the Court accepts that plea, there will be no trial, you will be waiving or giving up your right to trial, and all of the other rights I have described.  Do you understand that?

THE DEFENDANT:  Yes.

*Id.* at 14.

Chaves' fourth claim fails under both *Strickland* prongs.  Given the record establishing Chaves' sworn statements acknowledging her understanding (1) of her right to appeal, and (2) that by pleading guilty, she would be waiving or giving up that right, her claim that she was rushed into entering the Plea Agreement based on Panagakos' failure to explain the ramifications of the waiver of her right to appeal is wholly incredible.

Further, because Chaves pled guilty after being advised of her right to appeal and that by pleading guilty, she would be giving up such right, she cannot prove prejudice -- that but for Panagakos' failure to explain that if she pled guilty, she could not file an appeal of the judgment and sentence, she would have rejected the Plea Agreement and insisted on proceeding to trial.  Accordingly, the court finds that Chaves' fourth ineffective assistance of counsel claim fails.

### 5.  *Failure to File a Notice of Appeal*

Lastly, the court addresses Chaves' claim that Panagakos was ineffective in failing to file a notice of appeal from her sentence.  Specifically, Chaves contends that she "informed her counsel that she wished to appeal, to which Counsel Panagakos informed her, she had relinquished those rights."  Doc. No. 143, § 2255 Motion at 6.  Panagakos, however, specifically denies that Chaves

instructed her to appeal.  *See* Doc. No. 150-6, Panagakos Decl. ¶ 18 ("Ms. Chaves never informed me that she wished to appeal.").

The Sixth Amendment guarantees the right to effective assistance of counsel at all critical stages of a criminal proceeding, including sentencing.  *See United States v. Gonzalez*, 113 F.3d 1026, 1029 (9th Cir. 1997).  Further, the Sixth Amendment may be violated if counsel fails to file a notice of appeal.  *Roe v. Flores Ortega*, 528 U.S. 470, 477 (2000).  Here, although Panagakos denies being instructed to appeal, Chaves simply disagrees.

The Ninth Circuit addressed a similar situation in *Sandoval Lopez*, where the defendant entered into a plea agreement largely waiving his right to appeal.  409 F.3d at 1194-95.  In a subsequent § 2255 motion, the defendant claimed that despite a request, his counsel failed to file a notice of appeal.  *Id.* at 1195.  Although recognizing the rule it announced was "contrary to common sense," *id.* at 1196, *Sandoval Lopez* held that the failure to file a notice of appeal when instructed to do so, even in the face of an appeal waiver, constitutes ineffective assistance of counsel:

> If, as Sandoval-Lopez claims, it is true that he explicitly
> told his lawyer to appeal his case and his lawyer refused,
> then we are required by *Flores Ortega* to conclude that it
> was deficient performance not to appeal and that
> Sandoval-Lopez was prejudiced.  The prejudice in failure

> to file a notice of appeal cases is that the defendant lost
> his chance to file the appeal, not that he lost a favorable
> result that he would have obtained by appeal.

*Id.* at 1197.   That is, even assuming an appeal of a sentence would be meritless,

"prejudice" necessarily results just by losing the right to appeal.

*Sandoval Lopez* further explained two options available in such a

situation:

> If a defendant, even one who has expressly waived his
> right to appeal, files a habeas petition after sentencing
> and judgment claiming that he ordered his attorney to
> appeal and his attorney refused to do so, two things can
> happen.  The district court can hold an evidentiary
> hearing to decide whether petitioner's allegation is true,
> and if it is, vacate and reenter the judgment, allowing the
> appeal to proceed.  Or, if the [government] does not
> object, the district court can vacate and reenter the
> judgment without a hearing and allow the appeal to
> proceed, assuming without deciding that the petitioner's
> claim is true.

*Id.* at 1198.

Thus, guided by *Sandoval Lopez*, the court directs the United States

to inform the court by October 10, 2016, if it (1) seeks an evidentiary hearing as to

whether Chaves actually instructed Panagakos to file a notice of appeal and

Panagakos refused, or (2) elects not to oppose the § 2255 Motion solely on this

remaining ground, and to instead permit Chaves to appeal.  If the United States

seeks an evidentiary hearing, the court will appoint counsel for that limited

purpose under Rule 8 of the Rules Governing Section 2255 Proceedings for the

U.S. District Courts.

## V.  CERTIFICATE OF APPEALABILITY

The court has denied Chaves' § 2255 Motion as to all grounds except

the claim that counsel was ineffective in failing to file a notice of appeal.  The

court thus addresses here whether Chaves should be granted a certificate of

appealability ("COA") as to the four dismissed grounds.  *See* R. 11 Governing

Section 2255 Proceedings (providing that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant").

A COA may issue only if the petitioner "has made a substantial showing of the

denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

"The standard for a certificate of appealability is lenient."  *Hayward*

*v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc), *overruled on other*

*grounds by Swarthout v. Cooke*, 562 U.S. 216 (2011).  The petitioner is required to

demonstrate only "that reasonable jurists could debate the district court's

resolution or that the issues are adequate to deserve encouragement to proceed

further."  *Id*. (citation and internal quotation marks omitted).  The standard

"requires something more than the absence of frivolity but something less than a merits determination." *Id.* (internal quotation marks omitted).

The court carefully reviewed Chaves' assertions and gave her every benefit by liberally construing them. Chaves had the opportunity to explain her assertions in response to the government's Opposition and evidence, but failed to file a Reply. Nevertheless, based on the record and the analysis above, as to Chaves' ineffective assistance of counsel claims based on grounds one through four, reasonable jurists could not find the court's rulings debatable. Accordingly, the court DENIES issuance of a COA as to these grounds.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, the court DENIES Chaves' § 2255 Motion in part, as to grounds one, two, three, and four. The court DENIES a COA as to those grounds. As to ground five, alleging ineffective assistance of counsel for failure to file an appeal, the United States is DIRECTED to file a Response pursuant to *Sandoval Lopez* by October 10, 2016.

///

///

///

///

34

Because the § 2255 Motion as a whole remains open, it is premature to enter judgment (even if the court has denied relief on all but one ground).  The court will address ground five after reviewing the Government's Reponse.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 27, 2016.



  /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Chaves,* Cr. No. 14-00579 JMS, Civ. No. 16-00112 JMS-BMK, Order: (1) Denying in Part Defendant/Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255, Doc. No. 143; and (2) Denying a Certificate of Appealability as to Certain Claims